## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VLINGO CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| NUANCE COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## COMPLAINT

Plaintiff, Vlingo Corporation ("Vlingo"), as and for its complaint against defendant, Nuance Communications, Inc.'s ("Nuance"), states as follows:

### NATURE OF THE ACTION

1.      This is an action for unfair competition under federal, state and common law, commercial bribery, breach of contract, and intentional interference with prospective advantageous relationships.

### THE PARTIES

2.      Vlingo is a Delaware corporation having a principal place of business at 17 Dunster Street, Cambridge, Massachusetts 02138.

3.      Nuance is a Delaware corporation having a principal place of business at 1 Wayside Road, Burlington, Massachusetts 01803.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Vlingo's federal unfair competition claim pursuant to 15 U.S.C. § 1121.  This Court has jurisdiction over Vlingo's state law claims pursuant to the doctrine of pendent jurisdiction.

5.     Venue is proper in herein as both parties reside in, and most of the acts complained of occurred within, this District.

## COUNT 1
### (Unfair Competition – 15 U.S.C. § 1125)

6.     Vlingo realleges and incorporates by reference the matters set forth in paragraph 1 through 5 above.

7.     This claim is brought pursuant to the unfair competition laws of the United States, 15 U.S.C. §§ 1121 *et seq.*

8.     On or around June 16, 2008, Nuance filed suit against Vlingo in the Eastern District of Texas alleging that Vlingo infringed United States patent number 6,766,295 ("the '295 patent").

9.     On or around June 16, 2008, Nuance issued a press release falsely and misleadingly stating that Vlingo infringed the '295 patent.  This press release misrepresented the nature, characteristics and qualities of Vlingo's products, services and commercial activities.

10.     On August 9, 2011, a jury sitting in the District of Massachusetts, to which the case filed by Nuance in Texas had been transferred, determined that Vlingo did not infringe the asserted claims of the '295 patent.

11.     Nuance's conduct set forth above constitutes unfair competition in violation of 15 U.S.C. § 1125.

12.     Nuance's acts of unfair competition have caused harm to Vlingo.

13.     Nuance will continue to cause harm to Vlingo unless and until Nuance is enjoined.

**COUNT II**
**(Unfair Competition – Mass. Gen. Laws, ch. 93A, §§ 2, 11)**

14.     Vlingo realleges and incorporates by reference the matters set forth in paragraph 1 through 13 above.

15.     This claim is brought pursuant to the unfair competition laws of the Commonwealth of Massachusetts, Mass. Gen. Laws, ch. 93A, §§ 2, 11.

16.     Nuance has been aware of Vlingo since Vlingo's inception as Mobeus, Inc. in June 2006 and, since that time, has coveted Vlingo's innovative, cutting-edge technology.

17.     In or around August/September 2006, Vlingo disclosed prototype products to Nuance sales representative, Felix Goffman, for evaluation. Mr. Goffman and others at Nuance were impressed with and excited about Vlingo's work. Nuance asked Vlingo to be part of a "mobile solutions showcase" at Nuance's 2006 Annual Users Group Conference.

18.     At the conference in Orlando, Florida, there was a lot of excitement by Nuance. This excitement led to an invitation for Vlingo's Founder, Mike Phillips, to have lunch with Nuance's Chief Executive Officer, Paul Ricci.

19.     On October 24, 2006, Mike Phillips met with Paul Ricci who offered on behalf of Nuance to acquire Vlingo. Mr. Phillips declined Mr. Ricci's offer.

20.     In November 2006, another meeting took place between Mike Phillips, John Nguyen, and Paul Ricci. This meeting took place at Vlingo's office in Kendall Square, Cambridge, Massachusetts. At this meeting, Paul Ricci once again offered on behalf of Nuance to acquire Vlingo. Mike Phillips and John Nguyen informed Paul Ricci that Vlingo

did not wish to be acquired by Nuance.

21.     In February 2007, Vlingo received several visits from Rich Palmer, then head of corporate development at Nuance.  Mr. Palmer indicated that Nuance wanted to create a "technology partnership" with Vlingo.  Rich Palmer reminded Mr. Phillips that Mr. Ricci takes all Nuance business personally.  Mr. Palmer informed Mr. Phillips that Mr. Ricci was very disappointed that Phillips left Scansoft and did not accept Mr. Ricci's invitation to acquire Vlingo.  Mr. Palmer informed Mr. Phillips that Mr. Ricci can be vindictive if he does not get his way and that Vlingo would not be happy if Mr. Palmer and Mr. Phillips could not work out a technology partnership and the matter was placed in the hands of people with big egos, such as Mr. Ricci.  Finally, Mr. Palmer threatened Mr. Phillips with bearing the exorbitant cost of intellectual property litigation and told Mr. Phillips to inform his Board that they can either take the technology partnership deal offered by Nuance or pay $20 million in legal fees vindicating themselves in intellectual property litigation.

22.     Vlingo did not agree to sell the company to Nuance as twice requested by Mr. Ricci and did not enter into a technology partnership with Nuance as requested by Mr. Palmer.  In response to Vlingo's refusal to be acquired and share its technology with Nuance, Nuance filed suit for patent infringement on June 16, 2008 in an effort to leverage the acquisition of Vlingo.  Nuance filed the suit in the Eastern District of Texas notwithstanding that Nuance is headquartered in Burlington, Massachusetts and Vlingo is headquartered in Cambridge, Massachusetts.  Nuance filed in the Eastern District of Texas with knowledge that such forum was not convenient to Vlingo or Nuance and with the intent to increase the expense of litigation to Vlingo,  so as to leverage a potential acquisition of Vlingo.

23.     Nuance filed the complaint in the Eastern District of Texas after another case

previously filed by Nuance in that forum against a Massachusetts-based defendant had been transferred to the District of Massachusetts. More particularly, on March 30, 2006, Nuance filed a patent infringement suit in the Eastern District of Texas against Voice Signal Technologies, Inc. ("VST") in an effort to use that litigation to force VST to sell the company to Nuance. Nuance's complaint against VST acknowledged that VST was headquartered in Woburn, Massachusetts. Upon VST's motion, that case was transferred to the District of Massachusetts on October 30, 2006. In the Order transferring the VST case to this District, Magistrate Judge Craven expressly determined that Massachusetts is a more convenient forum, because both Nuance and VST are based in Massachusetts, and that litigating in Texas is more expensive for two Massachusetts based companies. Nonetheless, in an effort to drive up Vlingo's litigation expenses and leverage an acquisition, Nuance filed its complaint herein against Vlingo in the Eastern District of Texas.

24.     On August 3, 2009, Judge Folsom ordered Nuance's case against Vlingo transferred from the Eastern District of Texas to the District of Massachusetts, finding that "[t]rial in Massachusetts would undoubtedly be more convenient and less costly to both parties.

25.     The patent infringement case, pending in Massachusetts as Civil Action No. 09-cv-11414, recently decided in Vlingo's favor was filed and conducted against Vlingo not for the legitimate purpose of enforcing Nuance's patent rights, but for the purpose of coercing Vlingo into selling itself to Nuance for a commercially unreasonable price.

26.     Prior to filing the patent suit, Nuance failed to investigate or determine whether or not the accused Vlingo products operate as described herein, but proceeded to file suit regardless, in an effort to leverage the acquisition of Vlingo.

27.    Prior to filing the patent suit, Nuance knew that it needed access to the code used in the accused Vlingo products to determine whether or not those products obtained a sample of the speaker's speech and incorporated the sample into the speech recognition system. Prior to filing the complaint in this case, Nuance failed to obtain or investigate the code used in the accused Vlingo products.  Prior to filing the patent suit, Nuance never identified to Vlingo the '295 patent as being infringed by any Vlingo product, nor did Nuance even request Vlingo to examine its code.

28.    Prior to filing the patent suit, Nuance knew or should have known that the asserted claims of the '295 patent are not infringed by Vlingo, a fact confirmed by the jury verdict rendered in that case on August 9, 2011 finding that Vlingo did not infringe any of the asserted claims of the '295 patent.

29.    Nuance's assertion that the Vlingo products infringe the '295 patent was objectively baseless and interposed in bad faith for anti-competitive purposes.  As set forth above, contemporaneous with the filing of the patent case in Texas in Texas on June 16th, 2008, Nuance issued a press release falsely representing to the marketplace that Vlingo is infringing the '295 patent.  This tactic was orchestrated by Nuance in bad faith so as to drive down the value of Vlingo and leverage an acquisition by Nuance at a commercially unreasonable price.  One of ordinary skill in the art would readily understand after a review of the relevant source code that the Vlingo products do not incorporate each element of the asserted claims.  Moreover, the United States Patent & Trademark Office has rejected the asserted claims of the '295 patent as unpatentable.

30.    By asserting claims against Vlingo that Nuance knew or should have known are not infringed, issuing a false press release, and threatening to cause Vlingo to expend

$20,000,000 in legal fees, Nuance attempted to force Vlingo into being acquired by Nuance at an artificially and unreasonably low price.

31.     In September 2009, Vlingo's Chief Executive Officer, David Grannan, and Chief Technical Officer, Mike Phillips, met with Nuance's Chief Executive Officer, Paul Ricci, Steve Chambers and Helgi Bloom in California.  Nuance offered to acquire Vlingo. Vlingo rejected this offer.

32.     Several days later, Paul Ricci and Steve Chambers, capitalizing upon the Massachusetts patent suit, made a telephone call to Dave Grannan and Mike Phillips.  At the time of this telephone call Mr. Ricci was the CEO and Chairman of the Board of Nuance.  At the time of this telephone call Mr. Ricci knew that Messrs. Grannan and Phillips were corporate officers of Vlingo each having a fiduciary duty to Vlingo.  Mr. Ricci at this time further appreciated that Messrs. Grannan, Phillips and Nguyen were key persons at Vlingo.

33.     During the telephone call referenced in the preceding paragraph, in violation of Massachusetts' prohibition against commercial bribery, Mr. Ricci, the CEO and Chairman of the Board of Nuance, a public company, offered to pay Messrs. Grannan, Phillips and Nguyen $5 million dollars each if they could convince the Vlingo board of directors to approve the acquisition of Vlingo on the terms previously proposed by Nuance.  Mr. Ricci made an alternative offer in the event that they were unsuccessful in convincing the Vlingo board to accept the acquisitions term proposed by Nuance.  Alternatively, Mr. Ricci offered Messrs. Phillips, Grannan and Nguyen $5 million each plus the monies they would have received had the acquisition went through, if they would quit Vlingo and work for Nuance.  Mr. Ricci made this offer knowing full well that Messrs. Grannan, Phillips and Nguyen were key persons whose departure from Vlingo would cripple the company and, thus put Vlingo out of

business.

34.     Mr. Phillips did not accept the $5 million dollars offered by Mr. Ricci.

35.     Mr. Grannan did not accept the $5 million dollars offered by Mr. Ricci.

36.     Mr. Nguyen did not accept the $5 million dollars offered by Mr. Ricci.

37.     Messrs. Phillips, Grannan and Nguyen did not accept Mr. Ricci's alternative offer to quit Vlingo and join Nuance.

38.     By using patent litigation as a tool to leverage the acquisition of Vlingo, Nuance is improperly using its patent to obtain and/or coerce an unfair commercial advantage to compete with Vlingo and has caused damage, reparable and irreparable, to Vlingo.

39.     Nuance's acts of unfair competition described above constitute knowing and willful violations of Mass. Gen. Laws ch. 93A, §§ 2 and 11.

40.     Unless enjoined, Nuance will continue to compete unfairly with Vlingo.

## COUNT III
### (Unfair Competition – Common Law)

41.     Vlingo realleges and incorporates by reference the matters set forth in paragraph 1 through 40 above.

42.     This claim arises under the common law of the Commonwealth of Massachusetts.

43.     Nuance's conduct described above constitutes a knowing and willful violation of the common law of unfair competition in the Commonwealth of Massachusetts.

44.     Nuance's acts of unfair competition have caused damage, reparable and irreparable to Vlingo.

45.     Unless enjoined, Nuance will continue to compete unfairly with Vlingo in violation of the common law.

## COUNT IV
### (Commercial Bribery – Mass. Gen. Laws chs. 93A, §§ 2, 11 & 271, § 39)

46.     Vlingo realleges and incorporates by reference the matters set forth in paragraph 1 through 45 above.

47.     This claim is brought pursuant to the unfair competition laws of the Commonwealth of Massachusetts, Mass. Gen. Laws, ch. 93A, §§ 2, 11.

48.     The offers of payments and other inducements and things of value to Vlingo representatives in order to influence their conduct set forth above regarding Nuance's acquisition of Vlingo constitutes knowing and willful acts of commercial bribery in violation of Mass. Gen. Laws chs. 93A, §§ 2, 11 and 271, § 39.

49.     By its acts of commercial bribery, Nuance has caused damage to Vlingo.

## COUNT V
### (Breaches of Contracts)

50.     Vlingo realleges and incorporates by reference the matters set forth in paragraph 1 through 49 above.

51.     On or around July 14, 2011, Vlingo and Nuance entered into two confidentiality agreements pursuant to which Vlingo disclosed confidential information to Nuance regarding certain financial transactions that Vlingo was negotiating with, *inter alia*, AT&T.

52.     Under the terms of these agreements, Nuance was prohibited from using any information provided to Nuance by Vlingo for any purpose other than conducting compromise negotiations.

53.     In violation of the confidentiality provisions of these agreements, Nuance used confidential information provided by Vlingo to Nuance under the protection of the

agreements to communicate with at least AT&T in order to interrupt and interfere in Vlingo's attempts to enter into a commercially advantageous business relationship with AT&T.

54.     More particularly Steve Chambers, Executive Vice President of Nuance, called AT&T and urged AT&T not to form a syndicate with Vlingo because Nuance was forming its own syndicate that Nuance urged AT&T to join.

55.     By contacting at least AT&T in violation of the terms of these agreements, Nuance breached the agreements.

56.     Nuance's breaches of these agreements caused damage to Vlingo.

57.     Pursuant to the terms of the agreement, Nuance's breach of contract is deemed to cause irreparable harm to Vlingo.  Moreover, Nuance's breach of these agreements did, in fact, cause irreparable harm to Vlingo.

58.     Unless enjoined, Nuance will continue to cause reparable and irreparable harm to Vlingo.

## COUNT VI
### (Intentional Interference with Prospective Advantageous Relationships)

59.     Vlingo realleges and incorporates by reference the matters set forth in paragraph 1 through 58 above.

60.     In August/September 2010, Vlingo was negotiating with Nokia to sell Vlingo products and services to Nokia.  Nuance was also negotiating with Nokia to sell Nuance products and services to Nokia.

61.     Nuance was aware that Vlingo was negotiating to sell Vlingo products and services to Nokia.

62.     The person negotiating with Vlingo on behalf of Nokia was Bruce Bowden.

63.     During the negotiations with Vlingo Mr. Bowden requested that Vlingo provide Nokia with a detailed analysis of Vlingo's patent portfolio and Vlingo's patent strategy.

64.     On August 30, 2010 and September 1, 2010, Vlingo sent Mr. Bowden the requested analysis and strategy.

65.     In a telephone call with Nokia's Janne Karjalainen on September 15, 2010, Vlingo was informed that Nokia and Vlingo were in agreement in principal on the terms laid out in Nokia's Request for Proposal and that Vlingo should plan to have the appropriate personnel travel to London to start drafting a contract with Nokia's attorneys on September 23 and 24, 2010.

66.     On September 21, 2010, Vlingo was informed by Nokia that Nokia intended to move forward with a vendor other than Vlingo.

67.     On September 21, 2010, Mr. Bowden informed Vlingo that he was leaving Nokia and was "now conflicted with from working with [Vlingo.]"

68.     Mr. Bowden left Nokia to work for Nuance.  In a letter dated September 9, 2010, filed with the Securities & Exchange Commission, Nuance announced the confirmation of Mr. Bowden's employment with Nuance at a starting base salary of $350,000 and numerous additional forms of remuneration.

69.     Pursuant to the terms of his employment at Nuance, Mr. Bowden was hired "at will,"

70.     Upon information and belief, Mr. Bowden's at will salary and other remuneration at Nuance is substantially higher than his salary and other remuneration while employed by Nokia.

71.     During the period of his current employment with Nuance, Mr. Bowden was in possession of the confidential information provided to him by Vlingo while Mr. Bowden was employed by Nokia.

72.     Upon information and belief, Nuance lured Mr. Bowden away from Nokia with unrealistic higher salary and other remuneration in order to obtain valuable, confidential information about Vlingo in order to interfere with the prospective advantageous business relationship between Vlingo and Nokia and obtain the Nokia business for Nuance.

73.     Mr. Bowden specifically requested confidential information from Vlingo, and was in possession of such information, while employed by Nokia, while negotiating his employment with Nuance, when he accepted employment with Nuance in September, 2010, and during his employment at Nuance.

74.     By its conduct regarding Nokia and Mr. Bowden set forth above, Nuance obtained business from Nokia that, absent Nuance's intentional interference, would have been given by Nokia to Vlingo.

75.     As set forth above, Nuance also violated its confidentiality agreements with Vlingo in order to deter, *inter alia*, AT&T from entering into an advantageous business relationship with Vlingo.

76.     By its conduct regarding AT&T, Nuance interfered with the prospective advantageous relationship between Vlingo and AT&T.

77.     By its intentional interferences with Vlingo's prospective advantageous relationships with, *inter alia*, Nuance has caused damage, reparable and irreparable, to Vlingo.

78.     Unless enjoined, Nuance will continue to intentionally interfere with Vlingo's prospective advantageous relationships.

**WHEREFORE**, Vlingo prays that:

A.     Judgment be entered in favor of Vlingo on all counts of the Complaint;

B.     Nuance, its officers, agents, servants, employees, and those persons in active concert or participation with it, be enjoined from competing unfairly with Vlingo;

C.     Nuance, its officers, agents, servants, employees, and those persons in active concert or participation with it be enjoined from all further acts of commercial bribery regarding Vlingo;

D.     Nuance, its officers, agents, servants, employees, and those persons in active concert or participation with it be enjoined from all further beaches of its confidentiality agreements with Vlingo;

E.     Nuance, its officers, agents, servants, employees, and those persons in active concert or participation with it be enjoined from all further attempts to interfere with Vlingo's prospective advantageous business relationships;

F.     Nuance account for the damages they have caused to Vlingo by their unlawful conduct described above;

G.     Vlingo be awarded its attorneys' costs and fees incurred in this action; and

H.     Vlingo be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Vlingo demands trial by jury on all issues set forth above so triable.

**VLINGO CORPORATION**

Dated: September 1, 2011

By: _____ /s/ Dean G. Bostock _____
Paul J. Hayes (BBO# 227000)
Dean G. Bostock (BBO# 549747)
Eugene A. Feher (BBO# 550762)
James C. Hall (BBO# 656019)
Jacob W. Schneider (BBO# 675315)
**HAYES BOSTOCK & CRONIN LLC**
300 Brickstone Square, 9th Floor
Andover, MA 01810
Tel: 978-809-3850
Fax: 978-809-3869
Email: phayes@hbcllc.com
dbostock@hbcllc.com
gfeher@hbcllc.com
jhall@hbcllc.com
jschneider@hbcllc.com

ATTORNEYS FOR PLAINTIFF